IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| JENNIFER S., | Civil No. 25-00418 MWJS-WRP |
| Plaintiff, | ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| vs. | |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

**ORDER REVERSING DECISION OF THE COMMISSIONER OF
SOCIAL SECURITY AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS**

This is an appeal from a decision of the Commissioner of Social Security denying

an application for disability benefits.  Like many such appeals, this one turns on

whether the Commissioner (acting here through an Administrative Law Judge, or

"ALJ") offered sufficient reasons to reject Plaintiff Jennifer S.'s testimony about the

severity of her symptoms.[1]

At a hearing before the ALJ, Plaintiff testified that although she holds a law

degree and has worked several jobs over the years, she has been unable to maintain

---

[1]      For reasons explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Plaintiff's first name and the initials of her last name are used in this order.

regular employment—and has been terminated from multiple recent positions—because of excessive absences.  These absences, Plaintiff testified, were the result of her frequent migraines and other medical conditions, including coughing, fatigue, malaise, and facial pain from chronic sinusitis.  Dkt. No. 15-1, at PageID.111-120 (Administrative Record (AR) at 77-86).  No party disputes that if the ALJ had accepted Plaintiff's testimony, she would have been found disabled within the meaning of the Social Security Act and entitled to benefits.

The ALJ found no evidence that Plaintiff was malingering, or feigning, her symptoms.  And the ALJ recognized that Plaintiff's severe impairments—which the ALJ found to include "obesity; degenerative disc disease; peripheral neuropathy; migraines; hypothyroidism and history of nodules and follicular thyroid cancer status post February 2022 thyroidectomy; depression; [and] anxiety"—*could* reasonably have produced the symptoms and pain alleged.  *Id.* at PageID.54 (AR at 20).  Nonetheless, the ALJ found that Plaintiff's symptom testimony was not credible.

The key question in this appeal is whether the ALJ offered "specific, clear and convincing reasons" for rejecting Plaintiff's symptom testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up).  Given the narrowness of this issue, the court will not recount the factual or procedural background of this case,

except as necessary to provide context for the court's ruling.  That background is laid

out in detail in the ALJ's written decision.  Dkt. No. 15-1, at PageID.48-67 (AR at 14-33).[2]

In that written decision, the ALJ offered three categories of reasons for rejecting

Plaintiff's symptom testimony, and the Commissioner defends each in his answering

brief.  *See* Dkt. No. 22, at PageID.2524-2527.  In evaluating these reasons, the court is

mindful that the Commissioner's disability determination should be reversed only

when "it is either not supported by substantial evidence or is based upon legal error."

*Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).  This standard is deferential,

requiring "only such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned

up).

But there is an important limit to this deference:  while a reviewing court "will

not fault the agency merely for explaining its decision with less than ideal clarity," it

still must "demand that the agency set forth the reasoning behind its decisions in a way

that allows for meaningful review."  *Brown-Hunter*, 806 F.3d at 492 (cleaned up).  That is

to say, a "clear statement of the agency's reasoning is necessary because we can affirm

---

[2]    The court also trusts that the reader is familiar with—or can readily look up—the
standards an ALJ generally must follow in considering an application for Social
Security disability benefits.  *See generally Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721,
724 (9th Cir. 2011) (describing the "five-step sequential process for determining whether
an applicant is disabled within the meaning of the Social Security Act").  As the court
will resolve this appeal on the narrow issue presented in the text above, no further
discussion of these standards is needed here.

the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.*

And to qualify as an adequately "clear statement" rejecting a claimant's symptom testimony, the ALJ's finding "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Id.* at 493 (cleaned up). Put differently, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (cleaned up).

The ALJ did not meet these requirements here. And because she did not, the decision denying benefits must be reversed and the matter remanded for further administrative proceedings.

1. Consider the first of the ALJ's reasons for rejecting Plaintiff's symptom testimony. As the Commissioner notes, the ALJ found that Plaintiff received "conservative treatment" for her allegedly disabling recurrent sinus infections. Dkt. No. 22, at PageID.2524 (quoting Dkt. No. 15-1, at PageID.57 (AR at 23)). In particular, the Commissioner points to the ALJ's finding that when Plaintiff complained of chronic sinusitis to her doctor, "she was instructed to use only Flonase and ongoing nasal irrigation." *Id.* at PageID.2525. And while the doctor contemplated whether surgery was needed, it ultimately was not ordered. *Id.*

The Commissioner relies on *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007), for the proposition that "'[e]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.'"  Dkt. No. 22, at PageID.2524-25 (quoting *Parra*, 481 F.3d at 751).  But "[n]othing in *Parra* suggests that an ALJ can characterize a course of treatment as conservative when the evidence in the record—or, at a minimum, inferences fairly drawn from the record—do not reflect that a more aggressive treatment option was available."  *Loniza v. King*, Civ. No. 23-00352, 2025 WL 435943, at *6 (D. Haw. Feb. 7, 2025).  In other words, a "claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."  *Id.* at *5 (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).  Although the ALJ pointed to a doctor's consideration of surgery as a possible treatment, nothing in the record supports the inference that a doctor ever concluded that it was an appropriate intervention, let alone that Plaintiff ever rejected the option.  And the ALJ identified no other more aggressive form of treatment that could have been offered to Plaintiff if her symptoms were as severe as she reported them to be.

The ALJ's reference to conservative treatment, on this record, does not qualify as a "specific, clear and convincing" reason for rejecting Plaintiff's symptom testimony.  *Brown-Hunter*, 806 F.3d at 492-93.

2.  Of course, if a form of treatment—whether conservative or not—actually addresses a claimant's symptoms, then that might be an independent reason to

conclude that their symptom testimony is not credible. *See Wellington v. Berryhill*, 878

F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving

symptoms can undermine a claim of disability."). And that indeed was the ALJ's

second reason offered for rejecting Plaintiff's testimony in this case. According to the

ALJ, Plaintiff received "adequate pain control and headache control" from the

treatment she received. Dkt. No. 15-1, at PageID.57 (AR at 23).

This reasoning goes part of the way. In support of her finding, the ALJ identified

medical records showing that Plaintiff's migraine headaches responded well to

medication and ultimately became a much less significant issue for her. Dkt. No. 22, at

PageID.2525-26 (summarizing records). Those records arguably provide substantial

evidence to support the ALJ's conclusion that Plaintiff's headaches did not render her

unable to work. But even if so, they still do not support a rejection of Plaintiff's

independent testimony about her chronic sinusitis, which Plaintiff testified would, in

the relevant time period, incapacitate her—and thus require unexcused absences from

work—"almost monthly" or "at least every other month." Dkt. No. 15-1, at PageID.116

(AR at 82). And while these sinusitis symptoms flared relatively infrequently, they

were extraordinarily severe: Plaintiff testified that she would be in so much pain that it

"literally felt as if someone had come up and hit me in the side of the face [with] a

sledgehammer." *Id.*; *see also id.* (explaining that when experiencing these symptoms, she

was in too much pain to be around other people in public).

Though infrequent, these sinusitis episodes were recurrent and severe enough to contribute to Plaintiff's inability to maintain employment.  And the ALJ's reliance on medical records concerning Plaintiff's headaches leaves the testimony about chronic sinusitis untouched.  Accordingly, although the ALJ may well have appropriately addressed Plaintiff's migraine headaches, the ALJ's reliance on improvement through treatment does not fully support—or at least the ALJ did not adequately explain why it fully supports—rejecting Plaintiff's symptom testimony in its entirety.[3]

3.  That leaves the ALJ's third and final set of reasons for rejecting Plaintiff's symptom testimony:  Plaintiff's activities of daily living.

It is appropriate for an ALJ to compare a claimant's symptom testimony to their activities of daily living, to see whether the claimant "participate[s] in activities that are inconsistent with the limitations they allege."  *Auapaau v. O'Malley*, Civ. No. 24-00176, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024).  But "there is a danger in conducting an analysis of that sort, for 'disability claimants should not be penalized for attempting to lead' their 'lives in the face of their limitations.'"  *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  For that reason, the "the Ninth Circuit has provided guidelines

---

[3]     To be sure, the record shows that *after* the relevant disability period (that is, after March 31, 2021, the last date on which Plaintiff's work history provided her disability insurance coverage, *see* Dkt. No. 15-1, at PageID.52 (AR at 18)), Plaintiff's chronic sinusitis improved for reasons Plaintiff could not explain.  *See id.* at PageID.117 (AR at 83).  But the ALJ did not suggest that this after-the-fact improvement bore on the severity of Plaintiff's symptoms during the relevant time period (just as the aggravation of any condition after-the-fact would not have done so).

for using evidence of a claimant's activities of daily living to assess a claimant's symptom testimony": they "may be found to bear on the credibility of a claimant's testimony only if (1) the activities actually contradict the claimant's symptom testimony, or (2) they show that the claimant spends a substantial part of their day engaged in pursuits that are transferrable to a work setting." *Id.* (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)).

The ALJ did not satisfy these guidelines here. The ALJ relied on Plaintiff's testimony that she took care of her elderly mother and handled various chores at her mother's house. Dkt. No. 15-1, at PageID.59 (AR at 25). But the ALJ did not explain why Plaintiff's ability to generally handle these chores would contradict Plaintiff's testimony that she occasionally—at least one a month or every other month—was incapable of performing any tasks, and the record reveals no obvious contradiction. Nor does the record show that Plaintiff spent any substantial part of her day on these activities.

Same for the ALJ's reliance on evidence that Plaintiff worked "part time" as a caregiver for some other elderly couple. *Id.* Despite the ALJ's responsibility to develop the record in the face of any ambiguities, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), the ALJ did not ask Plaintiff any questions about this arrangement at the hearing. The record therefore does not disclose how many hours Plaintiff worked, how flexible her schedule was, and whether Plaintiff was allowed to regularly take days off

whenever her symptoms required it.  The record at it stands, then, does not support the

ALJ's conclusion that Plaintiff's part time caregiving contradicted Plaintiff's symptom

testimony.  Nor does it support the conclusion that Plaintiff spent any substantial part

of her day on this activity.

The ALJ also relied on a medical record that noted Plaintiff cared for an "infant

niece."  Dkt. No. 15-1, at PageID.57 (AR at 23).  Perhaps one could reasonably infer that

a person primarily responsible for the care of an infant is not likely to have much

flexibility in their schedule.  But as Plaintiff observes in her briefing, there is no

evidence in the record that Plaintiff had an infant niece in the relevant time period.  Dkt.

No. 21, at PageID.2509-10.  And while Plaintiff did have a then-three-year-old niece, the

record does not disclose how extensive Plaintiff's responsibility for this niece really

was—whether an occasional weekend or something more substantial.  Nor does it

reflect whether Plaintiff was ever the sole guardian of her niece, or whether she instead

assisted alongside others whenever and to whatever extent she could.  In short, the

record as it exists reveals no contradiction between Plaintiff's symptom testimony and

this activity.  Nor does it reflect that Plaintiff spent any substantial part of her days

engaged in this activity.

Finally, the ALJ relied on the fact that Plaintiff had planned to make a two-week

trip to the continental United States.  Dkt. No. 15-1, at PageID.59 (AR at 25).  But there is

no obvious inconsistency between Plaintiff's testimony that she could not work because

9

of excessive unexcused absences, on the one hand, and that she had enough moments of

lucidity that a two-week trip was possible (that, indeed, even attempts at work were

possible, even though they were regularly derailed by her unexcused absences).

*   *   *

For the foregoing reasons, the court concludes that the ALJ—acting on the

Commissioner's behalf—did not offer adequate reasons to reject Petitioner's symptom

testimony.  The Commissioner's decision denying Petitioner's application for Social

Security disability benefits is, therefore, REVERSED and the case is REMANDED for

further administrative proceedings consistent with this order.  Given this ruling, the

court declines to resolve Petitioner's alternative argument for reversal, which is that the

ALJ erred for the independent reason that she did not adequately take Plaintiff's

chronic sinusitis into consideration at all.  Dkt. No. 21, at PageID.2499-2505.  *Accord*

*Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding for one reason and

"declin[ing] to reach [an] alternative ground").

IT IS SO ORDERED.

DATED:  July 21, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

*Jennifer S. v. Frank Bisignano*; Civil No. 25-00418 MWJS-WRP; ORDER REVERSING
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING
FOR FURTHER ADMINISTRATIVE PROCEEDINGS

10